UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMILY GAMMOH<br><br>Plaintiff<br><br>-against-<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES<br><br>Defendant | Case No.<br><br>PLAINTIFF'S MEMORAMDUM OF LAW IN SUPPORT OF HER MOTION FOR A PRELIMINARY INJUNCTION AND FOR AN EXPEDITED HEARING ON THE SAME |

## INTRODUCTION

Plaintiff Emily Gammoh moves the Court to exercise its authority to enjoin the Defendant United States Citizenship and Immigration Services (USCIS) from rejecting her Form I-129 upon behalf of Cherryl De Lima, from failing to treat this petition as having been filed on January 5, 2022 and from failing to adjudicate it in the same order as other Forms I-129 received for H-2B classification of beneficiaries on that date. Ms. Gammoh further asks this Court to expedite a hearing on the same because a failure to almost immediately decide this motion is likely to render it, and this action, moot.

As will be shown, the USCIS has rejected Ms. Gammoh's petition precisely because she complied with the instructions on the form and failed to provide an answer to a question on it which would have been both nonsensical and absurd, not to mention perjurious and a (false) admission of her intention to violate the law. What is more, the regulation which provided the apparent basis for this regulation was promulgated for reasons that are completely illogical and so arbitrary. Inasmuch as this rejection was both arbitrary and not in accordance with law, Ms.

1

Gammoh has a clear and substantial likelihood of success on the merits of this action. Further, she will suffer irreparable harm if the injunction is not granted, inasmuch as there are only a limited number of visas available for H-2B workers which are being exhausted as this memorandum is written and certainly will cease to be available long before the action is adjudicated, or even before the USCIS must answer the complaint. Finally, for the same reason a preliminary injunction is in the public interest and a hearing on this motion should be expedited.

### BRIEF OVERVIEW OF THE RELEVANT PROVISIONS OF THE H-2B PROGRAM

8 U.S.C. § 1101 provides in relevant part that:

(a)As used in this chapter— …

(15)The term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens— …

(H)
an alien … (ii) … (b) having a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform other temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country, … .

8 C.F.R. § 214.2(h)(6)(iii)(A) provides that "Prior to filing a petition with the director to classify an alien as an H-2B worker, the petitioner shall apply for a temporary labor certification with the Secretary of Labor for all areas of the United States, … The labor certification shall be advice to the director on whether or not United States workers capable of performing the temporary services or labor are available and whether or not the alien's employment will adversely affect the wages and working conditions of similarly employed United States workers."

A petition to classify a noncitizen as an H-2B nonimigrant (an H-2B petition) shall be accompanied by an approved temporary labor certification issued by the Secretary of Labor (or the Governor of Guam, as appropriate) 8 C.F,R, § 214.2(h)(6)(vi)(A) as well as certain other documents not directly relevant to this action.

Of direct relevance however is the fact that :

"Aliens classified as H-2B nonimmigrants may not exceed 66,000" in any given fiscal year, 8 C.F.R. § 214.2(h)(8)(i)(C), and that "(i)f the total numbers available in a fiscal year are used, new petitions and the accompanying fee shall be rejected and returned with

a notice that numbers are unavailable for the particular nonimmigrant classification until the beginning of the next fiscal year. 8 C.F.R. § 214.2(h)(8)(ii)(C).

Further, "When calculating these numerical limitations .... for a given fiscal year, USCIS will make numbers available to petitions in the order in which the petitions are filed." 8 C.F.R. § 214.2(h)(8)(vii).

The USCIS's website explains that:

> Congress has set the H-2B cap at 66,000 per fiscal year, with 33,000 for workers who begin employment in the first half of the fiscal year (October 1 - March 31) and 33,000 for workers who begin employment in the second half of the fiscal year (April 1 - September 30). Any unused numbers from the first half of the fiscal year will be available for employers seeking to hire H-2B workers during the second half of the fiscal year. However, unused H-2B numbers from one fiscal year do not carry over into the next. Once the H-2B cap is reached, USCIS may only accept petitions for H-2B workers who are exempt from the H-2B cap.
>
> "H-2B Temporary Non-Agricultural Workers" https://www.uscis.gov/working-in-the-united-states/temporary-workers/h-2b-temporary-non-agricultural-workers (last accessed January 25, 2022).
>
> The USCIS is current accepting H-2B petitions and as a consequence the available numbers are rapidly diminishing. In fact, last year the cap was reached by February 12, 2021. "H-2B Cap Reached for Second Half of FY 2021", https://www.uscis.gov/news/alerts/h-2b-cap-reached-for-second-half-of-fy-2021 (last accessed January 25, 2022).

After USCIS approves Form I-129, prospective H-2B workers (such as Cherryl De Lima) who are outside the United States must:

- Apply for an H-2B visa with the U.S. Department of State (DOS) at a U.S. Embassy or Consulate abroad and then seek admission to the United States with U.S. Customs and Border Protection (CBP) at a U.S. port of entry; or
- Directly seek admission to the United States in H-2B classification with CBP at a U.S. port of entry in cases where an H-2B visa is not required.

"H-2B Temporary Non-Agricultural Workers", *supra*.

## BRIEF STATEMENT OF RELEVANT FACTS

On December 19, 2008, the Department of Homeland Security to issue a "Final Rule" amending, DHS regulations at 8 C.F.R. § 214.2 to provide, among other things, that

"Beginning with petitions filed for workers for fiscal year 2010, an H-2B petition must state an employment start date that is the same as the date of need stated on the approved temporary labor certification." Changes to Requirements Affecting H–2B Nonimmigrants and Their Employers " 73 FR 78103, 78129.

This amendment is codified as a portion of at 8 C.F.R. § 214.2(h)(6)(iv)(D).

The DHS provided the following purported "explanation" of the amendment:

> This final rule adopts the proposed requirement that an H–2B petition identify an employment start date that is the same as the date of employment need stated on the approved temporary labor certification. New 8 CFR 214.2(h)(6)(iv)(D). Considering this requirement, it would be procedurally impossible for a petitioner to file an H–2B petition any sooner than the earliest date upon which it is able to start recruiting for a nonagricultural position.

Changes to Requirements Affecting H–2B Nonimmigrants and Their Employers " 73 FR at 78129

On approximately October 5, 2021, Emily Gammoh filed an Application for Temporary Labor Certification (TLC) with the Department of Labor, seeking its certification that qualified workers in the United States are not available for the job of Nanny she wished to offer to Ms. De Lima and that her employment will not adversely affect wages and working conditions of similarly employed United States workers. Exhibit A at 1. On November 12, 2021, the Department of Labor issued such a certification, indicating the "employment begin date" would be December 23, 2021, and the "employment end date" would be December 23, 2022. *Id.*

4

On January 5, 2022, Ms. Gammoh delivered a Form I-129 upon Ms. De Lima's behalf, seeking to classify her as a nonimmigrant under 8 U.S.C. § 1101(a)(15)(H)(ii)(B), to the USCIS's Vermont Service Center (VSC). Exhibit A at 5. On January 10, 2020, the VSC issued a "Notice of Action" to Ms. Gammoh stating in relevant part that:

> Please resubmit your petition with this letter and all supporting documents to the address below.
> Your petition, supporting documents and fee(s) are being returned to you. Your petition is being returned for the following reason:
> You did not include a valid Determination for your ETA-9I 42B Application for Temporary Employment Certification (TLC).
> In order for the Determination to be valid, it must be on an "Approval of H 2B Temporary Labor Certification" form. All fields must be filled in by the Department of Labor (DOL).
> The "From" date on Form I-129 found at Page S, Part S, number II must match the Employment Begin Date in number 9 of the TLC.
>
> Exhibit A at 119.

Although not expressly stated as such, it is apparent that this notice was of a "rejection" pursuant to 8 C.F.R. 103.2(a)(7), providing in relevant part that:

> (ii) A benefit request which is rejected will not retain a filing date. A benefit request will be rejected if it is not:
>
> (A) Signed with valid signature;
>
> (B) Executed;
>
> (C) Filed in compliance with the regulations governing the filing of the specific application, petition, form, or request; and
>
> (D) Submitted with the correct fee(s). If a check or other financial instrument used to pay a fee is returned as unpayable because of insufficient funds, USCIS will resubmit the payment to the remitter institution one time. If the instrument used to pay a fee is returned as unpayable a second time, the filing may be rejected. Financial instruments returned as unpayable for a reason other than insufficient funds will not be redeposited. If a check or other financial instrument used to pay a fee is dated more than one year before the request is received, the payment and request may be rejected.
>
> (iii) A rejection of a filing with USCIS may not be appealed.

Inasmuch as the notice did not assert that the petition failed to comply with subparagraphs A, B, or D, it is apparent that it was rejected because USCIS had found that it failed to comply with subparagraph C. This is consistent with the notice's assertion that:

> You did not include a valid Determination for your ETA-9I 42B Application for Temporary Employment Certification (TLC).
> In order for the Determination to be valid, it must be on an "Approval of H 2B Temporary Labor Certification" form. All fields must be filled in by the Department of Labor (DOL).
> The "From" date on Form I-129 found at Page S, Part S, number 11 must match the Employment Begin Date in number 9 of the TLC.

*Id.*

Inasmuch as Ms. Gammoh did include with her petition an ETA-9142B Application for Temporary Employment Certification (TLC) which was in fact on an Approval of H 2B Temporary Labor Certification, form, and all the fields on that Form were filled in by the Department of Labor (DOL), Exhibit A at 1, by process of elimination one is compelled to conclude that this petition was rejected solely because the "From" date on Form I-129 found at Page 5, Part 5, number 11 did not match the Employment Begin Date in number 9 of the TLC.

This particular provision of the Form I-129 states in its entirety:

"11. Dates of intent employment from: (mm/dd/yyyy) to: (mm/dd/yyyyy)." Exhibit A at 43.

The employment begin date in number 9 of the TLC filed with the petition is December 23, 2021. Exhibit A at 1. Therefore the rejection notice apparently held that the TLC was invalid because Form I-129 did not indicate that the dates of intended employment were from December 23, 2021. Rather, the I-129 indicated that the dates of intended employment were from April 1, 2022 to December 23, 2022. Exhibit A at 43.

ARGUMENT

On a motion for a preliminary injunction, the Court must balance four factors: (1) the movant's showing of a substantial likelihood of success on the merits, (2) irreparable harm to the movant, (3) substantial harm to the non-movant, and (4) public interest.[1] *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009).[2]

I.  MS. GAMMOH HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

   A. The explanation provided by the USCIS for rejecting Ms. Gammoh's petition was entirely illogical and so arbitrary

---

[1] Although it is often asserted that the standard for a "mandatory" injunction is higher than for a "prohibitory injunction", this is not true. "(T)his court has rejected any distinction between a mandatory and prohibitory injunction, observing that "the 'mandatory' injunction has not yet been devised that could not be stated in 'prohibitory' terms." *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 7 (2016).

[2] In *Davis* the Court noted that "(t)he Supreme Court has recently addressed the standard for a preliminary injunction. *See Winter v. NRDC*, 129 S. Ct. 365, 375 (2009) (holding that irreparable injury must be likely, 'not just a possibility'). We note that the analysis in *Winter* could be read to create a more demanding burden, although the decision does not squarely discuss whether the four factors are to be balanced on a sliding scale. *See id.* at 392 (Ginsburg, J., dissenting) ('[C]ourts have evaluated claims for equitable relief on a '"sliding scale,"' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high. This Court has never rejected that formulation, and I do not believe it does so today.')." Here as in *Davis* this Court need not decide which standard applies because plaintiff succeeds even without considering the "sliding scale" analysis of *Davenport*.

The assertion that Ms. Gammoh "did not include a valid Determination for your ETA-9142B Application for Temporary Employment Certification (TLC) because "the 'From' date on Form I-129 found at Page 5, Part 5, number 11 must match the Employment Begin Date in number 9 of the TLC" is facially illogical, rendering the decision upon which it is premised arbitrary. *IRS v. FLRA, 963 F.2d 429, 439, 295 U.S. App. D.C. 326 (D.C. Cir. 1992)).* ("[I]f the result reached is illogical on its own terms,' the Authority's order is arbitrary and capricious."). Ms. Gammoh could not possibly have intended to employ Ms. De Lima from December 23, 2021 because that date had already passed when the petition was delivered to USCIS. The ordinary meaning of "intent" is "(h)ave (a course of action) as one's purpose or objective; plan."³ One cannot have a course of action as one's purpose or objective or plan to do something in the past. One cannot say (logically), for example, "I intend to go to school yesterday." Therefore the decision rejecting Ms. Gammoh's petition is facially illogical and so arbitrary.

Nevertheless, it might be argued that the decision to reject the petition was consistent with 8 C.F.R. § 103.2(a)(7), in that placing any date other than the start date of the TLC in the first blank on Page 5, Part 5, number 11, would appear to be contrary to 8 C.F.R. § 214.2(h)(6)(iv)(D), providing in relevant part that " an H-2B petition must state an employment start date that is the same as the date of need stated on the approved temporary labor certification." Inasmuch as 8 C.F.R. § 103.2(a)(7)(ii)(C) provides that a request benefit may be rejected if it is not "(f)iled in compliance with the regulations governing the filing of the specific application, petition, form, or request", it could be argued that the petition was properly

---

³ Definition from Oxford Languages, online at
https://www.google.com/search?q=intend+dictionary&rlz=1C1JZAP_enUS909US910&oq=int&aqs=chrome.0.69i5
9l3j35i39j69i6l13j69i65.813j1j7&sourceid=chrome&ie=UTF-8 (last accessed January 16, 2022).

8

rejected for failing to comply with a regulation, even though this was not indicated in the Notice. However, such an argument would be wrong as contrary to over DHS regulations which expressly overrule 8 C.F.R. § 214.2(h)(6)(iv)(D).

8 C.F.R. § 103.2(a)(1) provides in relevant part that:

> Preparation and submission. Every form, benefit request, or other document must be submitted to DHS and executed in accordance with the form instructions regardless of a provision of 8 C.F.R. chapter I to the contrary. The form's instructions are hereby incorporated into the regulations requiring its submission.

The Form I-129 unambiguously directs the employer to state the "dates of intended employment". Inasmuch as such dates could not under any circumstances include December 23, 2021, seeing that date had already passed, and in fact Ms. Gammoh actually intended to employ Ms. De Lima beginning on April 1, 2022, therefore the only way that Ms. Gammoh could comply with § 214.2(h)(6)(iv)(D) is to disobey the instruction on Form I-129, at Page 5, Part 5, number 11. But since since DHS regulations required the petitioner to comply with the Form's instruction, even if there is a regulation in Chapter I to the contrary, and give the actual dates of employment, which could not possibly include a start date of December 23, 2021, therefore USCIS regulations required petitioner to enter an intended start date of April 1, 2022 on the Form.

Finally, had Ms. Gammoh in fact stated on the Form I-129 that she intended to employ Ms. De Lima from December 23, 2021, not only would she be testifying under penalty of perjury, Exhibit A at 44, to an intent to do the impossible, but also to violate the law, since Ms. De Lima was not authorized to be employed (and in fact was not even in the U.S., Exhibit A at 41) on January 5, 2022, and the earliest date she could possibly have been legally employed would've

been April 1, 2022, the earliest date an H-2B number might become available to her. So not only was Ms. Gammoh's petition rejected because she refused to testify under penalty of perjury to an impossibility, but also because she refused to falsely confess to an intention of violating the immigration laws of the United States.

Accordingly, inasmuch as the petitioner completed the Form I-129 in accordance with its instructions and, so, with USCIS regulations, therefore it is substantially likely that this Court will find the decision to reject her petition to be arbitrary (as illogical) and/or not in accordance with law and, therefore, hold it unlawful and set it aside. 5 U.S.C. § 706(2).

   B. The DHS's promulgation of the regulation which provided the apparent basis for the rejection of Ms. Gammoh's petition was likelwise illogical and so arbitrary

As noted above, the DHS explained its amendment of its regulations to provide that

"(b)eginning with petitions filed for workers for fiscal year 2010, an H-2B petition must state an employment start date that is the same as the date of need stated on the approved temporary labor certification" as making it "procedurally impossible for petitioner to file an H–2B petition any sooner than the earliest date uponwhich it is able to start recruiting for a nonagricultural position". Changes to Requirements Affecting H–2B Nonimmigrants and Their Employers " 73 FR at 78129

This explanation is illogical, and so irrational, because it absolutely procedurally impossible for an H-2B petition to be sooner than the earliest date upon the petitioner to be to start because an H-2B petition must be filed with a temporary labor certification, 8 C.F.R. § 214.2(h)(6)(iv)(A), and a temporary labor certification cannot be issued until after the H-2B petitioner has not merely commenced, but actually completed. See 20 C.F.R. § 655.51(a) ("The criteria for certification include whether the employer has a valid *H-2B Registration* to participate in the H-2B program and has complied with all of the requirements necessary to grant the labor certification."); 20 C.F.R.§ 655.20(s) ("*Recruitment requirements.* The employer must conduct

all required recruitment activities, including any additional employer-conducted recruitment activities as directed by the CO, and as specified in §§ 655.40 through 655.46.").

Accordingly, this purported explanation for this regulatory amendment is entirely illogical, and so arbitrary and capricious. *FLRA*, 963 F.2d at 439. Ms. Gammoh's H-2B petition was rejected solely because of her failure to comply with the provision of 8 C.F.R. § 214.2(h)(6)(iv)(D) unlawfully providing that "(b)eginning with petitions filed for workers for fiscal year 2010, an H-2B petition must state an employment start date that is the same as the date of need stated on the approved temporary labor certification".

Therefore, inasmuch as the DHS failed to provide a rational explanation for amending its regulations to provide that "(b)eginning with petitions filed for workers for fiscal year 2010, an H-2B petition must state an employment start date that is the same as the date of need stated on the approved temporary labor certification", the Court is substantially likely to find this regulatory change unlawful and set aside pursuant to 5 U.S.C. § 706(2). Further, inasmuch as the USCIS's rejection of Ms. Gammoh's H-2B petition was apparently solely upon her basis to comply with this unlawful regulation, the rejection should likewise be held unlawful and set aside. *Id.*

Finally, The Department of Homeland Security's amendment to the instruction to Form I-129 to implement language in it similar to the reference language of 8 C.F.R. § 214.2(h)(6)(iv)(D) was done was no explanation whatsoever, rational or otherwise, and so was likewise arbitrary and capricious and should be held unlawful and set aside.

II.     MS. GAMMOH WILL SUFFER IRREPARABLE HARM IF USCIS IS NOT
        ENJOINED FROM REJECTING HER PETITION AND FAILING TO PROCESS IT

>  AS IF RECEIVED ON JANUARY 5 BECAUSE THE AVAILABLE H-2B NUMBERS WILL RUN OUT LONG BEFORE THE USCIS IS EVEN REQUIRED TO FILE AN ANSWER TO HER COMPLAINT

As noted, the 33,000 H-2B numbers available for the second part of the 2022 fiscal year are already rapidly diminishing as the Court reads this memorandum, and will likely be exhausted by February 12 of this year, if not (much) sooner. Therefore even a slight delay in requiring USCIS to accept Ms. Gammoh's petition and processing it as actually received will likely moot this action. This is itself irreparable harm. *John Doe Agency v. John Doe Corp.*, 488 U.S 1306, 1309, 109 S. Ct. 852, 853-54 (1989) ("The fact that disclosure would moot at part of the Court of Appeals' decision requiring disclosure of the Vaughn index would also create an irreparable injury. *See New York v. Kleppe*, 429 U. S. 1307, 1310 (1976) (MARSHALL, J., in chambers) ('Perhaps the most compelling justification for a Circuit Justice to upset an interim decision by a court of appeals [is] to protect this Court's power to entertain a petition for certiorari before or after the final judgment of the Court of Appeals')."), *Michael v. INS*, 48 F.3d 657, 664 (2d Cir. 1995) ("Absent a stay, Michael would suffer irreparable injury through deportation, thereby mooting this case.").

III. DEFENDANTS WILL SUFFER MINIMAL HARM FROM BEING PROHIBITED FROM REJECTING THE PLAINTIFF'S FORM I-129

The balance of equities tip strongly in the plaintiffs' favor in that although Mr. & Mrs. De Jesus will suffer irreparable harm if the rejection of their applications is not prohibited, if there is any harm to the defendants at all, it is minimal. *See Ortega-Peraza v. Ilchert*, No. C-92-4972 MHP, 1993 U.S. Dist. LEXIS 2195, at *15 (N.D. Cal. Feb. 26, 1993) ("On the other hand, the burden on the defendants that would result from prohibiting their withholding of employment authorization from Ortega-Peraza is minimal."). Here prohibiting defendants

from rejecting the plaintiffs' forms places upon them virtually the same *de minimis* burden as processing Mr. Ortega-Peraza's application for employment authorization.

## IV. THE PUBLIC INTEREST FAVOR AN INJUNCTION

Finally, the public interest favors enjoining USCIS as requested inasmuch as there is a public interest in just judgments (as well as just findings supporting them). *Arizona v. Washington*, 434 U.S. 497, 510 (1978). Since not enjoining USCIS as requested will moot this lawsuit long before the defendant's unjust findings in this matter can be replaced with just ones, accordingly an injunction requiring it to accept Ms. Gammoh's petition and process it before it is moot is in the public interest. Further, there is no prejudice to the agency or the public, inasmuch as, if after accepting Ms. Gammoh's petition for filing and processing in the order it was actually received, the USCIS ultimately concludes that it is unapprovable, it can still deny it.

## CONCLUSION

Inasmuch as Ms. Gammoh is substantially likely to prevail on the merits of her action and will suffer irreparable harm if the USCIS is not enjoined from rejecting her Form I-129 upon behalf of Cherryl De Lima, from failing to treat her petition as having been filed on January 5, 2021 and from failing to adjudicate it in the same order as other Forms I-129 received for H-2B classification of the beneficiaries on that date, the USCIS should be enjoined as requested. Further, inasmuch as this Court's failure to act almost immediately upon this motion is likely to render it moot before it can be decided, this Court should expedite a hearing on it.

Respectfully Submitted this 1ST day of February, 2022.

*s/Michael E. Piston*

Michael E. Piston (MI 002)
Attorney for the Plaintiff
Immigration Law Office of Los Angeles, P.C.
New York Office
38-08 Union St., Suite 9A
Flushing, NY 11354
(646) 876-3772
Fx: 206-770-6350
Michaelpiston4@gmail.com